Her argument is Mrs. Fields v. MFGPC Good morning. May it please the court, my name is Avery Salmon. I represent the appellants in this matter. Collectively, we refer to the appellants as Mrs. Fields. Your honors, this is an appeal from an injunction granted in the district court against my client. The injunction compels Mrs. Fields to terminate their relationship with Perfect Snacks, to remove all Perfect Snacks co-branded Mrs. Fields products from retail stores and from online distributors, and three, to reinstate the license agreement with MFGPC that had been terminated wrongly as the district court found. Now, you have not appealed that. I am not today, your honor. I'm sorry? Not today, no. Ever? Well, we disagree with that ruling. Well, are you going to appeal it sometime, or is it time run, or what's the situation? Well, it is interlocutory with respect to summary judgment, your honor. But pursuant to section 1292A, this appeal from the injunction is allowed. Okay, so this is just the appeal on the injunction. This is only the appeal from the injunction, that's correct. Your honors, the main problem in our view with the injunction is that there is no event that is going to befall MFGPC between now and trial, which will be irreparable. And there's certainly no imminent, great, actual, certain, and not theoretical. Is that because they're out of business? That's exactly right. We terminated in December 2014. In February of 2015, they moved for a preliminary injunction. In March and April of 2015, it was denied. They did not appeal, and they closed down their business. There was extensive testimony on the record about this from the principal of MFGPC, Mr. Lindley. He's out of business. He has had no contact with any buyers, with any retailers in over three years. He admitted that he would essentially be starting a brand new business up again with a new product. So is the argument here on irreparable harm that there is a way to compensate this company by damages? That's exactly right. And the idea of specific performance is not correct? Well, it's certainly, I think there's... Unsupported? We oppose specific performance. Right. But, and I think something that the lower court conflated is the availability of specific performance after trial and the specific remedy of a preliminary injunction now. Whatever additional profit that they can make from selling Mrs. Fields' branded popcorn between now and trial is compensatable, if that's a word, is compensatable in money damages. And I think that... Or compensable. Thank you, Your Honor. Sure, just let me know. You know, in preparing for the oral argument, I was rereading the Supreme Court's recent decision, Mission v. Tempanology. I think it came out during the briefing, and at least cited this in their opposition, and we responded in reply. And what's interesting in that case is that the court found that that was a bankrupt debtor. They had tried to reject the contract. The court found that the remedy for the early termination by the debtor, a termination that they found was invalid, the remedy would be damages for the year, approximate year and a half remaining on that contract. And again, I submit that all the more so here. They have been out of business since early 2015. They have no competitive position in the marketplace. And the district court has already found that they will, I think the word was, will almost certainly be entitled to damages for that period from termination through trial. And our position is, if that's the case, there's no preliminary injunction is warranted. So when the court said that there would be furthered diminishment of their place in the market, there was no support for that? Is that your view? That is my view, Your Honor. The court mentioned that in the conclusions of law towards the end, it recited that there would be a diminishment in the marketplace. What else did the court rely on to get to irreparable harm? My interpretation of the decision, and the court spends the majority of the time in its written decision, is on the difficulty of calculating damages. The court goes through a number of reasons why it thinks damages won't be equitable, why damages will be difficult to calculate. The court cites to the Great Recession. The court cites to that it may be difficult to use the sales of the new licensee to stand in for damages of what could have been sold. None of those reasons, we believe, are legally cognizable. And I think as we cited to Your Honors, there are a host of exclusivity cases ruled by this court where lost profits were available for breach of an exclusivity agreement. Including a case that we cited, I believe it is LifeWise, where there was a breach of an exclusivity type of contract. And the court found, you know, even though there was a breach, you didn't prove your damages. That doesn't mean that an injunction should issue. That just is an issue for damages. Well, I can see where, and I think you argue that there were many, many, many months of reports, of monies made, and all of that reporting that went back and forth between these parties as this agreement existed. So you argue that, okay, you can look at those reports, and that's an easy way to calculate damages. That's correct. I get that. That's easy. But what about these other products, other companies that are selling similar products, and how do you mesh that in? Or do you just look, you just say, well, we're just going to focus on what happened in the past, and we're not going to think about these other people that are basically invading the world of popcorn sales? Well, I think there's two questions embedded there. I think one is, what evidence is there that Perfect Snacks, that their sales are somehow diminishing the market position of MFGPC? So that could be question one, right? And they could have come in with evidence that said, we have this competitive position, we have these relationships in the marketplace, and Perfect Snacks is going to damage that. They didn't. They didn't because, again, they have no business for years and years. And second of all, and the court actually below did give extensive findings about this, the court found that Perfect Snacks operates a different market segment. If your honors are interested, MFGPC, back when it was selling, sold a chocolate-covered popcorn. Perfect Snacks sells a cookie-encrusted popcorn under its own name, and being co-branded with MFGPC in the testimony was that this is in a different place on the shelf. In the consumer snack industry, this is not the same thing. And the court relied on that to say, well, that's why we don't think it's a good stand-in. You argued in the district court, there are no cookie-encrusted, there is no cookie-encrusted popcorn on the shelves of MFSGs, and therefore, how can they be damaged? Did you argue that? Or put it another way, that wasn't their product? Is that your point? I don't think we made that specific argument, Your Honor. I think our argument is generally that to the extent they're damaged because they can't make profit selling cookies, that's just money. And to the extent that they're going to make a diminishment. It was always, it was just a matter of, it's subject to remedy through money. It's subject to remedy through money. There are six years of profit and loss statements in the record submitted by MFGPC, and they show the profit and loss each year. I think one of the problems is, in this case, for them and why they moved for an injunction, is that those documents show that they really weren't profitable. In those six years, they had a de minimis profit in a single year. And the district court in the decision, and we think wrongly, relied on that lack of profitability to say, well, I'm not sure that would do justice to the parties. And maybe there were extraneous reasons. But that's, I think, in general commercial litigation. You come in, you bring experts, you put models together, and you take the numbers and you derive a damage amount. Let me ask you a different question. The court granted partial summary judgment in favor of the appellees. Correct. On the merits. Correct. Did you ever seek to get an interlocutory appeal on the certified by the court to get it up? Because when you go back to trial, is that still an open question? I don't think so. I don't think so. So, first, we did not. I don't see any avenue to do so. It's a commercial case with summary judgment ruling, so I don't think it's appealable. Without a certification, it's not appealable. That's right. And I would say, yes, we would have to go to trial under that ruling. That's correct. Okay. So the agreement is still enforced then under the court's ruling? Well, no, I disagree with that. Well, they specifically ruled in favor of the appellee on that issue. Well, but I believe that the court specifically ruled that our termination was improper, that it constituted an improper repudiation of the agreement, and that it was a total breach. Right. There's no facts. There's no further factual inquiry left. That's correct. We will have to defend on the basis of remedies and damages, Your Honor, which is what the court ordered in that August decision. But given the fact that they reinstated, at least I thought they had reinstated, said the agreement had not been terminated, and then you went out and entered into a deal with Perfect Snacks or whatever the name of that other company is, right after that decision came down, why did you do that? Well, first, Your Honor, our position, the decision, and this is, we were very surprised to see this in the injunction. I bet you were. The decision did not rule that it's giving me an orange light. The decision did not rule that it was reinstated. It did not rule that way. It said that the contract was terminated, and now we're going to go to damages. And on this reinstatement of Perfect Snacks, you know, the rec, and we cite this in the papers, we terminated them on August 7th because they didn't pay. On August 8th, they wired the money. Immediately the CEO went to the board of directors and said, we have to put these guys back in. Look what happens when you terminate licensees. You think things are black and white. You end up in litigation for many years. He sent them the agreement before the decision. It turned out it was signed after the decision. But, again, the decision said, the decision did not say it was reinstated. It said you terminated, you repudiated, you committed a total breach, and now you're going to go to discovery on damages. With all due respect, I'm going to reserve my remaining time for rebuttal. Thank you. Thank you. So why didn't you appeal the 2015 denial of the preliminary injunction? Your Honors, I was not counsel. Your Honors, may it please the Court, my name is Brian Rothschild, Parsons, Bailey, and Latimer on behalf of the appellee, MFGPC, otherwise known as Mrs. Field's Gourmet Popcorn Company. Your Honor, I wasn't counsel. And if there's any imperfection in the pursuit of an injunction, that's it. And we replaced counsel. But the appellant's argument that we were required to hit our head against the wall and move again after Judge Benson ruled against this defendant at the time and dismissed all of its counterclaims and continue moving for a preliminary injunction while this case was on appeal at this Tenth Circuit panel is just wrong. And that added two years to where we are at this point. Immediately upon remand, in which this Court reversed the decision from the District Court, we were sitting in a situation where we had no confidence that the judge would agree with us on the merits. We had a case where this Tenth Circuit had said that we have stated a claim. We immediately sought to pursue that. Cross motions for summary judgment were filed. The judge ruled in our favor, at which point we had the element that we needed. We had a hearing at which the appellant was required to produce evidence to raise a genuine issue of material fact that they had a defense, and they failed to do so. That is a judgment on the merits. We therefore had the element that we were missing before, and immediately thereafter. And this feigned surprise on the part of appellant is a little bothersome to me in that the day after the MSJ ruling went down, I sent a letter saying, we now have the license. We would like to start manufacturing popcorn immediately. And it was rebuffed. So we then... Wait a minute. What do you mean rebuffed? I mean, you at that point claimed an intent to then continue to manufacture popcorn. Yes. Did Mrs. Fields sell the necessary cookies at that point? Or what is it they refused to do that kept you from selling your product? Their line has been cease and desist from day one. They have sent letters. They have made phone calls. There are numerous places in the record. And the idea here that we were free to manufacture popcorn at any time is unsustainable on this record. Every time that that is stated, I would point out in the briefing that there is no citation to any fact saying that we were free to make popcorn. Well, you couldn't produce Mrs. Fields' popcorn. We couldn't produce Mrs. Fields' popcorn also without Mrs. Fields' cooperation. We needed their labeling. Correct. But you could produce popcorn generally. We could produce popcorn. However, the Mrs. Fields Gourmet Popcorn Company has one business. It's the licensing and exploitation of that trademark. Hence the name. Hence the name. So that's my question. Did Mrs. Fields say, we will not sell you cookies? We will not participate in the use of our trademark? Your Honor, it's the trademark. The popcorn products created by MFGPC never contained Mrs. Fields' cookies. They had proposed a line like that, but no. They're a different indulgent product. They contain chocolate and tree nuts, real chocolate and real tree nuts as primary ingredients. At the lower court level, we had demonstratives and brought some in, but I did not bring any today. And you couldn't stay in business selling Mrs. Fields' popcorn? Your Honor, store brand or shelf unlabeled popcorn occupies an extraordinarily different category. The profit margins are thin at best, and the product placement is difficult. Mrs. Fields is a valuable and unique and irreplaceable trademark. It has almost universal recognition. Almost 100% of consumers recognize it. It unlocks not only doors to the retailers, it unlocks the doors not only to the customers, but to the retailers. You call and say, I am selling Mrs. Fields' popcorn. Can I put it on your shelf? That's a different conversation than I'm Joe Schmo, I have popcorn that I make. Can I put it on your shelf? It's materially different. That also, I'd like to address immediately the one question that I think raised. Let's continue the narrative here. So you go to Mrs. Fields and say, we'd like to mend our relations and we want to continue selling popcorn. And Mrs. Fields then, are you asserting to us, refused to cooperate? We were in litigation, Your Honor. They refused to allow us to do anything. Every time we've sent a letter or tried to get over there to make popcorn, they've refused or ignored us. And they do have obligations under the agreement. They're minimal. But some of them involve, this is what Mrs. Fields' packaging looks like. Here's the program. You have to make it comply. I'm with you. I understand. And so why can't you be fully compensated by damages? Your Honor, damage calculation, the difficulty and near impossibility of it, or at least unreliability of it at a certain point, is one of the elements of irreparable harm. Right. And I'll say a few things about it. One, we had an expert who was an expert who has calculated damages in hundreds of cases from Nathan's, Inc., respected intellectual property and accountancy consultancy. And he testified to that. But I would also say that Judge Parrish has been a sitting district court judge in the state court, in the federal district court for decades at this point, and has inherently an understanding that damages and how they are calculated and the difficulty of it. And when you are faced with the prospect of very likely two very completely different narratives that are going to be based on difficult economic circumstances, Mrs. Fields twice going through bankruptcy or complete reorganization during that same period, all kinds of intermittent issues, which she cited in her opinion. Well, again, you had all of this period of time with documentation. That is when your agreement was in force. Couldn't that information, that data, be used to calculate damages? It might be relevant, Your Honor. However, the adjustments to it based on completely different markets, changed economic circumstances, the amazing growth in the prepackaged ready-to-eat popcorn segment following the termination of the agreement, where it has, pardon the pun, exploded, those things make it very difficult, all of which were recognized and mentioned in the opinion. That is one element of irreparable harm, Your Honor. The other elements of irreparable harm, as found by the district court, include, Your Honor, I have to take issue with, I mean, the briefing in this case has been somewhat pointed. And I don't mind, I mean, Judge Lucero, you mentioned baked ham and souffle earlier, but the spaghetti against the wall is where we are here with the other food analogy. And I don't take issue with that sort of a tactic. But I struggle with the things that I tried to refute in the briefing. And I'll mention one in the reply, which I didn't obviously have an opportunity to respond to until now. Page 7. First, the lower court made no findings concerning any diminishment to MFGPC's competitive position between now and trial. This sort of a statement makes this court's job difficult. It's citationless, and it's demonstrably false. Page 16 of the memorandum of opinion uses almost exactly those words. In the absence of an injunction, MFGPC will be deprived of an opportunity to distribute a unique product, Mrs. Fields branded popcorn, Mrs. Fields would be free to license to other third parties, and MFGPC would suffer a further diminishment of its competitive position in the marketplace. Well, what is its diminishment? This is troubling to me because your client has been out of business for several years. Your Honor, I have a ready answer for that, and it lies in a similar issue, which is the cherry picking of the facts. The court in page 11 says that MFGPC has lost its retail contacts. Most of those contacts are established these days through brokers anyway. They don't go directly to the manufacturer. But setting that aside, the court said that MFGPC nevertheless has maintained its relationship with its manufacturers, its co-packers, and that those were in danger of being lost. That's a... Well, how long have you been out of business? Approximately four and a half years, Your Honor. And you still have relationships with co-packers and manufacturers? Yes, there were affidavits by the co-packers saying that they were ready to begin manufacturing upon receipt of an order that were submitted as part of the record on the motion for summary judgment, that we can restart our business. Now, this court's order staying the injunction has put us behind an additional year. There was one time during the year that retailers go and discuss with potential suppliers what's going to be on their shelves, and now we've passed that. Mr. Colbert testified to when that occurs and that the immediacy, that's why the immediacy was important. If we're going to restart our business and those co-packers are going to be in business, one of which, by the way, may have been lost already in the interim, that is an urgent issue. Those relationships are fraying and decaying, and Mr. Lindley testified to that, and the affidavits submitted in support of the motion for summary judgment and the motion for TRO from the co-packers were to that effect, and the immediacy of that issue is important. The other irreparable harm in the immediacy is this, Your Honor, and it's found in the findings of fact at page 8, paragraphs 25 through 26. If I was standing here on behalf of Apple and someone was out in the market making Apple products and they're only going to do it for a year, and I could get an expert to testify about how much that was going to cause damage to Apple, I'd be entitled to an injunction immediately. There'd be no question. What is the difference in this case? We are licensees with a worldwide exclusive license for at least another six years, maybe longer, if Mr. Salmon is right, and I believe he's wrong, and I agree with Judge Parrish that it's a perpetual license. Is it really? I believe it is. There's an ambiguity. I know you believe it, but what part of the agreement do you rely on? Isn't this an agreement that can be ended by, what, 20-day notice or something like that? There are two provisions, 20A and 20B. There are two of them, and if you read one of them, it conflicts with the other. One says it may only be terminated for cause. The other one says it may be terminated without cause, and they are conflicting. They are clearly conflicting, and, therefore, evidence on that issue for the damages trial may be relevant. Breach is not relevant to the damages trial. All we have left is damages and permanent injunction, whether we get restored to the license, Your Honor. But if I, again, was here on behalf of Apple, and suppose it was just a one-year license that I had obtained from Apple to manufacture an Apple product, and there was a competing product in violation of my license, same situation, no difference. And if you look at the cases, we are similar. Licensees have been granted injunctions, Dominion Satellite. Have you guys tried to settle this case? We have tried, and thank you very much to the offices of Ms. Schultz. She's been very effective in making some strides. However, we aren't there. We are nowhere near. We don't get involved in that, but I'm just curious as to whether you utilize the office. Your Honor, I do need to sum up here, and what I'll say is that there is no question that the correct preliminary injunction standard was applied. The correct case was cited. The four factors were provided. We're left with, was it an abuse of discretion? That's the standard we have here, and to do that, we look at, is there sufficient evidence to sustain the injunction at each one of those elements? And there is. We have a real immediacy, Your Honor, and cherry-picking a few facts, saying that, well, that's not enough of an immediacy, ignores important facts that are about the urgency that the court heard. We had a full extended day evidentiary hearing that went into the evening. Six witnesses, popcorn demonstratives, thousands of pages of documents, and those facts are entitled to significant deference. Lastly, I'll say, Your Honors, we understand the court's inclination to get this right and issue this stay. We would request that because of the urgency and the immediacy of this, if this court is inclined to affirm the injunction, that the court, before the time that it would take to issue a memorandum opinion, please, in advance, release the stay and reverse its previous order, staying the injunction. It's important to get this product up and running and to get these parties back in business, and that's what Judge Parrish ruled. I would also refer the court to her memorandum decisions denying the motion for a stay for very good reasons and denying Mrs. Fields' request for a bond. The evidence described there, including the complete lack of any evidentiary showing of any harm to Mrs. Fields for granting the injunction, is instructive. Thank you, Your Honors, unless there's anything further. Thank you. Thank you. I'd like to pick up on that last request to hurry along the decision. That's a request that MFGPC has never made in this case. They didn't appeal the denial of the preliminary injunction back in early 2015. They didn't seek expedited consideration of the district court. Well, they appealed the dismissal of their counterclaim. They appealed from the dismissal of their counterclaim in July of 2016, a year and a half later. They didn't seek any expedited ruling in this court on that appeal. When it was remanded back to the district court in January, they didn't seek any expedited consideration. I disagree. This is the first I'm hearing of a letter sent to me the day after the summary judgment motion. In fact, the record shows that they did not move for an injunction until 60 days after the summary judgment ruling. When they moved for the injunction in October of 2018, they did not move on an expedited basis, following until December, when then they moved for an expedited basis two months later. Following the hearing in January, after the court set post-trial briefing, they didn't seek any expedited ruling. In response to our motion, in this case, for a stay in expedited briefing, as the court noted in its stay decision, they didn't respond to the request for expedited briefing and seek any expedition. Subsequent to this briefing, and this is apparent on the docket, they have stipulated with us to a stay of discovery. Your Honors, as this court said in Hutchinson v. Profile, I believe is how you pronounce it in a slightly different procedural context, a party's own determination that the status quo can continue is a good indication that it can. Briefly, Your Honors, I disagree. It's not our position that the contract is extant for another six years. It's our position this contract is over, that it ended on its own terms in 2018. The only issue remaining is damages. And again, the issue is what competitive position. There are two Dominion cases in the record. I apologize if I could just finish this one statement. There's two Dominion cases in the record from this court, a 2001 decision and a 2004 decision. In the 2001 decision, the court granted the injunction because the CEO gave specific testimony about what was going to happen to his customer base if he couldn't do what this party was preventing him from doing. In the second Dominion proceeding, the court said even though you have an exclusive license and ordinarily that could give you an injunction, you haven't put specific facts in as to how it's going to affect your competitive position in the marketplace. Thank you very much. Thank you. Thank you both for your arguments this morning.